**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Joyce C. Denham and Peter V. Lundstrom,
husband and wife, and the Coracle Foundation,
a Minnesota non-profit corporation,

Plaintiffs,

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGEMENT AS A MATTER OF LAW ON NEGLIGENCE CLAIMS AND TO OFFSET THE JURY VERDICT.**

v.

Norwest Bank Minnesota, National Association,
Norwest Investment Services, Inc.,
Wells Fargo Bank Minnesota, National Association, and
Wells Fargo Brokerage Services, L.L.C.,

Defendants.

Civil Case No. 01-2050 (JMR/FLN)

---

## INTRODUCTION

Following the jury's verdict, Defendants have moved for judgment as a matter of law in Defendants' favor on Plaintiffs' negligence claim. Because Defendants have utterly failed to meet their burdens on either motion, Defendants' motion should be denied.

## ARGUMENT

**Defendants Rule 50 Motion Should Be Denied.**

Rule 50(a)(2) requires the party moving for judgment as a matter of law to make its initial motion prior to the submission of the case to the jury. "Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2). Plaintiffs do not believe that Defendants have met this requirement.

Defendants' motion at trial did not identify either law or facts on which Defendants were entitled to judgment.

Even if Defendants met the requirements of the rule they cannot prevail. Judgment as a matter of law following the return of a verdict by the jury should be granted only when there is no evidentiary basis for the verdict. Western Am., Inc. v. Aetna Cas. & Sur. Co., 915 F.2d 1181, 1183 (8th Cir. 1990). "The standard that must be met before a jury's verdict may be set aside is a rigorous one." Id. In considering a motion for judgment as a matter of law, a court must

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

Id. (citing Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir. 1985)). The court should not consider the evidence favoring the moving party. Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir. 1990).

Ignoring this standard of review, Defendants argue that Minnesota does not recognize independent torts for conduct that constitutes a breach of contract. Def. Mem. at 2. However, Defendants argument is misplaced. The cases that on which Defendants rely are cases involving the Uniform Commerical Code ("UCC") as adopted by the Minnesota Legislature. Under the UCC, it is true when a plaintiff brings both breach of contract and tort claims, the jury's verdict on breach of contract automatically preempts their verdict on tort claims. The policy behind this rule is to ensure that UCC provisions, affirmed by the legislature, are used to decide breach of contract claims between commercial entities. UFE, Inc. v. Methode Electronics, Inc., 808

F.Supp. 1407,1415, see also Hapka v. Paquin Farms, 458 N.W.2d 683, 688.[1] This has little bearing on this case for several reasons. First, only Defendants could be considered a commercial entity. Second, the contract between the parties was a service contract, not a contract for the sale of goods. The UCC covers only contracts for the sale of goods. Finally, Defendants arguments overlook that Defendants contract with Plaintiff expressly provides that Defendants shall be liable for losses resulting from Defendants negligence. See Affidavit of Adam A. Gillette ("Gillette Aff.") Exhibit 1. Given that Defendants have contracted to be liable for negligence it seems odd to suggest that Plaintiffs cannot bring negligence and breach of contract claims together.

Defendant argues that Plaintiffs offered no evidence of misdeeds separate from the breach of contract claim. Def. Mem. at 3. This, of course, ignores that the burden is on Defendants not Plaintiffs. There are several possible actions by Defendants that would not constitute a breach of contract but would constitute negligence. For example, evidence was presented at trial that Plaintiffs wished to go slowly in changing their investment portfolio but that Defendants traded away Plaintiffs' assets while the market was performing poorly. The jury could have found trading at that time to be negligent. The jury could also find that Defendants use of Ronald McGrane to prepare projections was negligent given that Mr. McGrane had no experience in drafting these sorts of projections. This negligence would exist whether there was a breach of contract or not. Moreover, the jury may have found that Defendants failure to check Mr. McGrane's projections was negligent given Mr. McGrane's background. This would have

[1] In relying on UFE, Defendants obliquely argue that the economic loss rule should apply to this case. The economic loss rule has been codified in Minnesota by Minn. Stat. §604.10. It states, in relevant part, that "[e]conomic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each *merchants* in goods of the kind is not recoverable in tort." Minn Stat. §604.10(a) (emphasis added). This would effectively bar Plaintiffs' tort claims if it applied. However as the statute plainly states, this rule does not apply because Plaintiffs are not merchants.

been negligence without regard to whether the contract was breached. Evidence was presented to the jury that for fourteen months none of Defendants employees looked at the agreement between Plaintiffs and Defendants. Mike Deasey, the individual in charge of Plaintiffs accounts, testified that he did not know whether Plaintiffs had signed a 4a or 4b agreement. This alone is sufficient for a jury to find on negligence irrespective of whether the contract was breached. These actions do not constitute two bites at the apple but rather two separate theories on which a reasonable jury could have found for Plaintiffs. Therefore, Defendants' motion should be denied.

**Defendants Motion For An Offset To The Jury Award Should Be Denied.**

Defendant states that "Plaintiffs have suffered a single loss on their bonds." This is not the issue at hand. It not loss on bonds that is at issue but rather Defendants handling of Plaintiffs' account Defendants arguments concerning a double recovery overlook that the jury was specifically instructed that Plaintiffs could not double recover. The jury was also aware that Plaintiffs recovered $120,000 from Piper Jaffray. There is no evidence that the jury did not consider this information when making its award. The jury awarded an amount substantially less than Plaintiffs' expert testified to the value of the claim. Plaintiffs claimed losses of approximately $600,000. The jury' award was only slightly more than Defendants' expert's valuation of Plaintiffs' claims. If the jury award is added to the Piper award the total amount of recovery is $295,000, or less than half the total damages. Plaintiffs have clearly not doubled recovered.[2]

[2] The jury verdict's calculation of damages could well be based on the value of trades made after the presentation of McGrane's projections. Shortly after the presentation Defendants made trades with losses of approximately $150,000. Add the $25,000 fee that Defendants received for handling Plaintiffs' accounts and we have the number of the jury verdict.

Moreover, Defendants argument overlooks that the nature of the claims in this case and in the arbitration are different. In the Piper settlement, Plaintiffs recovered for Piper's failure to build a bond ladder. In this case, Plaintiffs' sought to recover not for damages caused by Piper's actions but rather for damages that occurred during their relationship with Defendants. These damages did not occur simply because Piper failed to build a bond ladder. Rather, these damages occurred as a result of Defendants' actions with respect to Plaintiffs' accounts.

Defendants argument also overlooks that the common law of Minnesota favors rewarding Plaintiffs rather than offsetting the award. Under the collateral source rule, a plaintiff may recover damages from a tortfeasor, although the plaintiff has received money or services in reparation of the injury from a source other than the tortfeasor. Hueper v. Goodrich, 314 N.W. 2d 828, 830 (Minn. 1982).[3] Put another way, the common law collateral source rule states, "in general … compensation received from a third party will not diminish recovery against a wrongdoer." Hubbard Broad., Inc. v. Loescher, 291 N.W.2d 216, 222 (Minn. 1980), see also Hueper v. Goodrich, 314 N.W.2d 828, 830 (Minn. 1982), Restatement (Second) of Torts, § 920A(2) (1979).

Various justifications have been given for applying the rule. Among them is that "the injured party has paid for the collateral source benefit and deserves what he paid for." Hueper, 314 N.W.2d at 832 (Simonett J. dissenting). Here Defendants have expressly provided that they are liable for their negligence. See Gillette Aff. ex. 1. Presumably part of the $25,000 fee Plaintiffs paid Defendants was in exchange for this provision of liability. If Defendants are

[3] Minn. Stat. §548.36 abrogates the collateral source rule for physical injury. See also Duluth Steam Coop Ass'n v. Ringsred, 519 N.W.2d 215, 217-218 (Minn. App. 1994) (concluding the collateral source statute does not apply to claims that did not involve physical injury); 519 N.W.2d 215, 217-218 (Minn. App. 1994) (concluding the collateral source statute does not apply to claims that did not involve physical injury); Schmucker v. Creurer, 585 N.W.2d 425, 428 (holding that the collateral source statute does not apply to claims for property damage). Thus, Minn. Stat. §548.36 does not apply.

allowed to employ an offset to reduce Plaintiffs' award, they would not be held responsible for their negligence. This would conflict with another rationale of the rule. Namely, that the rule exists to ensure that the wrongdoer is punished by being made to take full responsibility for his negligence. Hueper, 314 N.W.2d at 830. The jury here found that Defendant was guilty of negligence and awarded $175,000 to Plaintiffs. This award serves two purposes. First, it attempts to put Plaintiffs' back to their original position before Defendant's negligent acts. Second, it serves to punish Defendants for their negligent acts. If offset were employed, Plaintiff's would receive less than one third of their award and Defendant's punishment would be reduced by over two thirds. Lastly, and perhaps most importantly, even if Defendant is correct in their belief that Plaintiff's claims against Piper and Wells Fargo arise out of the same loss, Defendant should not be able to reduce the jury's award for negligence because doing so would give Defendant a windfall. In such a case, when a windfall payment is inevitable, better it go to the injured person than to the tortfeasor as it ensures that the Plaintiff is more fully compensated Hueper, 314 N.W. 2d at 830. This maxim is especially true in the case at hand because Plaintiffs did nothing wrong – they simply trusted their financial advisors – and ended up losing thousands of dollars. Accordingly, Defendants' motion for an offset of the jury verdict should be denied.

**CONCLUSION**

Based on the above arguments, Plaintiffs respectfully request that this Court deny Defendants motions for an offset and for a judgment notwithstanding the verdict on Plaintiffs' negligence claims.

Dated: June 3, 2004

NICHOLS KASTER & ANDERSON, PLLP

__s/Adam A/ Gillette__

James H. Kaster #53946
Adam A. Gilette #0328532
4644 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone 612 338-1919
ATTORNEYS FOR PLAINTIFF