LEXSEE 2002 U.S. DIST. LEXIS 5794

**SUPERIOR FCR LANDFILL, INC., Plaintiff, v. WRIGHT COUNTY, MINNESOTA, Defendant.**

**Civil No. 98-1911 (JRT/FLN)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

**2002 U.S. Dist. LEXIS 5794; 54 ERC (BNA) 1790**

**March 31, 2002, Decided**

**DISPOSITION:** [*1] Defendant's motion for relief altering and amending the judgment, for judgment as a matter of law and summary judgment or, in the alternative, for new trial, DENIED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** Robert E. Cattanach and Michael R. Drysdale, DORSEY & WHITNEY, LLP, Minneapolis, MN, for plaintiff.

John M. Baker, Larry D. Espel and Mehmet Konar-Steenberg, GREENE ESPEL, P.L.L.P., Minneapolis, MN, for defendant.

**JUDGES:** JOHN R. TUNHEIM, United States District Judge.

**OPINIONBY:** JOHN R. TUNHEIM

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant Wright County's ("the County") motion for relief altering and amending the judgment, granting judgment as a matter of law and summary judgment and, in the alternative, a new trial pursuant to Rules 50, 56 and 59 of the Federal Rules of Civil Procedure. Following a two-week trial, the jury returned a special verdict in favor of plaintiff Superior FCR Landfill, Inc. on its claims that the County's enactment of a new zoning ordinance and its denial of plaintiff's rezoning request to expand its landfill contravened the dormant Commerce Clause. n1 Specifically, the jury found that the County discriminated against interstate commerce both [*2] in purpose and effect in making its decisions and that the County had not shown it had other less discriminatory alternatives available to it. The Court also has before it plaintiff's motion for an order to show cause why the County should not be held in contempt of the Court's October 25, 2001 Order.

n1 Plaintiff commenced this action in 1998, alleging that the County's zoning regulations and other activities with respect to the landfill market within its borders violated federal antitrust laws, constituted a taking under the state and federal constitutions, and contravened the dormant Commerce Clause. Plaintiff also brought state law claims of tortious interference with prospective business advantage, negligence and estoppel. In orders dated August 6, 1999 and May 17, 2000, the Court dismissed all of plaintiff's claims except for the alleged commerce clause violations.

For the reasons that follow, defendant's post-trial motion is denied. As to the second motion, the Court concludes that it requires oral argument [*3] before it can resolve the issues raised in that motion.

**BACKGROUND**

This case arises out of two zoning decisions made by Wright County which prevented plaintiff's plans to expand its landfill. In early 1996, plaintiff entered into an option agreement to buy farmland adjoining its current facility. In February 1996, plaintiff notified the County that it intended to expand the landfill onto the adjoining property. Under the County's zoning ordinance as it then

EXHIBIT
tabbles'
1

existed, plaintiff's proposed use of the land was a conditional use. The County advised plaintiff that it would not accept plaintiff's application for a conditional use permit until plaintiff completed an environmental assessment worksheet ("EAW"). Plaintiff thereafter began work on an EAW. Two weeks before the EAW was completed, however, the County enacted a one-year moratorium on ten categories of development, including landfill expansion. In October 1997, the County extended the moratorium. During this time, the County gathered information relevant to these categories of development. In March 1998, the County enacted a new zoning ordinance, Ordinance 98-01, that restricted all waste handling to specified districts. The [*4] configuration of the districts effectively precluded any possibility of plaintiff's 40-acre expansion because the parcel of land into which plaintiff desired to expand its landfill was zoned for agricultural use.

Plaintiff thereafter filed an application with the County for rezoning to change the boundaries of the Waste Handling District to accommodate its expansion. The County's Planning Commission held hearings on plaintiff's rezoning request on January 28, 1999 and March 4, 1999. At these hearings, plaintiff presented an Environmental Impact Study ("EIS") that addressed concerns regarding the visual, aesthetic, and environmental issues associated with the proposed expansion. The Planning Commission heard testimony and received submissions from citizens and political subdivisions of the County as well as plaintiff's representatives. Many of the citizens and political subdivisions voiced opposition to the idea of accepting large amounts of waste produced outside the County. The Planning Commission generated a number of findings in response to these hearings and recommended denying plaintiff's request. Plaintiff focuses in particular on Findings Nos. 4 and 11, which state, respectively: [*5]

> No County-based need for expansion. Other nearby disposal facilities are available to handle disposal of all the Wright County-generated waste. Superior's proposed vertical expansion of its existing landfill would adequately handle all the County-generated waste but for Superior's insistence on receipt of mostly out-of-County waste. Thus, without a County-based need, County agricultural land is sacrificed to afford space for disposal of out-of-County waste.
>
> All elected public officials expressing an opinion on the specific requests, oppose the rezoning. This includes the Town Board of Monticello Township, where the land is located. The opposition also includes the City Councils of the two most populated cities in the County, Monticello and Buffalo, which are also the two cities closest to the proposed rezoning site.

The Commission also made findings regarding the potential negative environmental impact of the proposed expansion and the potential adverse effects on property values. On April 6, 1999, after a hearing, the County's Board of Commissioners adopted the Planning Commission's findings and denied plaintiff's application.

At trial, plaintiff claimed that the [*6] County enacted Ordinance 98-01 and denied plaintiff's rezoning request with the intent to discriminate against interstate commerce and that both decisions had the practical effect of discriminating against interstate commerce. The County denied plaintiff's allegations and claimed that it made its decisions for the legitimate purpose of protecting the environment and preserving agricultural land.

**DISCUSSION**

**I. Defendant's Post-Trial Motion**

The County argues that judgment as a matter of law is warranted because plaintiff failed to prove that the County discriminated against interstate commerce intentionally or in effect. The County further claims that its decisions must be upheld even under strict scrutiny analysis because the evidence demonstrates that there were no other alternative means to achieve its legitimate interests in protecting the environment and preserving the County's agricultural land. The County also contends that a new trial is necessary because of alleged errors in some of the Court's evidentiary rulings and in its instructions to the jury.

**A. Standards of Review**

Judgment as a matter of law is appropriate if no reasonable juror could have returned [*7] a verdict for the nonmoving party. *Weber v. Strippit, Inc.*, 186 F.3d 907, 912 (8th Cir. 1999). The standard is a demanding one. *Children's Broadcasting Corp. v. Walt Disney Co.*, 1999 U.S. Dist. LEXIS 17507, No. 3-96-CIV-907 (DDA) (Jan. 15 1999) (unpublished opinion). In analyzing a Rule 50 motion, the Court must consider the evidence in the light most favorable to the nonmovant, resolve all factual conflicts in the nonmovant's favor and give the nonmovant the benefit of all reasonable inferences. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1002 (8th Cir. 2000). However, the nonmovant is not entitled to "the benefit of unreasonable inferences, or

those at war with the undisputed facts." *Heating & Air Specialists v. Jones*, 180 F.3d 923, 932 (8th Cir. 1999). Nor is a "mere scintilla" of evidence adequate to support a verdict. *Id.* "Judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support the verdict." *Id.*

Under Rule 59, the Court may grant a motion for a new trial to all or any of the parties on all issues or on particular issues. Fed. R. Civ. P. 59(a). The standard for granting a new trial is whether the [*8] verdict is against "the great weight of the evidence." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996). Any other standard "'would destroy the role of the jury as the principal trier of the facts, and would enable the trial judge to disregard the jury's verdict at will.'" *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992) (quoting *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir. 1972)). In evaluating a motion for a new trial pursuant to Rule 59(a), the "key question is whether a new trial should have been granted to avoid a miscarriage of justice." *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994).

**1. Intentional Discrimination Against Interstate Commerce**

Wright County first argues that no reasonable jury could have concluded that it intentionally discriminated against interstate commerce when it enacted a new zoning district for waste handling, as embodied in Ordinance 98-01, or when it denied plaintiff's rezoning request for expansion of its landfill in 1999. According to defendant, the **actual** evidence of any unconstitutional motivation on the part of [*9] the County is both legally and factually unfounded.

At the outset, the Court notes that its inquiry is limited at this point. It is the province of the jury to determine from the evidence what the facts are and then to apply the law, as given by the Court, to those facts. *See, e.g., Clark v. United States*, 391 F.2d 57, 60 (8th Cir. 1968); *United States v. Merrival*, 600 F.2d 717, 719 (8th Cir. 1979). It is not the province of the Court to undertake the job of fact-finding, either during trial or while entertaining post-trial motions. The Court will not re-weigh the evidence or second guess the factual findings of the jury.

Plaintiff presented sufficient evidence to support the jury's verdict of intentional discrimination. There was evidence that Commissioner Rose strongly opposed the importation of out-of-state waste as evidenced by the testimony of Dwight Egger and Commissioner Rose's own campaign statements. n2 Plaintiff also presented evidence that other Commissioners were aware of and concerned about the landfill expansion's effect on interstate commerce. The first comment addressed in the project's final Environmental Impact Statement is the [*10] concern that the expansion would serve other counties and other states. Plaintiff also presented substantial indirect evidence of opposition to out-of-county waste. n3 Commissioner Matson articulated disapproval of such a small percentage of waste originating within Wright County. Commissioner Sawatzke suggested increased waste surcharges in part to slow the amount of out-of-county waste coming into the landfill. Plaintiff also relied on Rezoning Findings No. 4 and 11, which were adopted by the Board in its denial of plaintiff's rezoning request. Plaintiff presented other indirect evidence of procedural irregularities in the consideration of plaintiff's expansion request, a prior history of discrimination against interstate commerce, and other factors which were relevant in making this determination. *See* Instruction No. 16. On this record and viewing the evidence and resolving all factual conflicts in favor of plaintiff, the Court finds that a reasonable jury could fairly rely on the above evidence in finding for plaintiff.

n2 The Court recognizes that this evidence could only support the jury's verdict as to the County's enactment of the new waste handling district in 1998 since Commissioner Rose was no longer a member of the Board in 1999 when the County denied plaintiff's rezoning request. To avoid any confusion on this point, the jury instructions listed who the members of the Board were in 1998 and 1999. *See* Instruction No. 17. [*11]

n3 Because the term "out of county" does not necessarily include out of state, the jury was instructed to determine whether the term, as used in the County's findings, documents and statements, included or excluded out-of-state waste. *See* Instruction No. 15.

**2. Discriminatory Effects on Interstate Commerce**

Wright County claims that plaintiff failed to prove its discriminatory effects claim as well. n4 According to Wright County, the effects theories plaintiff presented at trial--that the County's actions kept the landfill from competing in the interstate market and unconstitutionally shifted the negative costs of land filling (e.g. litter, destruction of agricultural land) to others--are at best incidental burden arguments more properly analyzed under *Pike v. Bruce Church*, 397 U.S. 137, 25 L. Ed. 2d

174, 90 S. Ct. 844 (1970). As such, because plaintiff's evidence presents nothing more than a garden-variety *Pike* claim, a claim not asserted by plaintiff in this case, the verdict in favor of plaintiff's discriminatory effects claim cannot stand.

n4 Discrimination against interstate commerce "may take one of three forms:" on its face, in its purpose or in its effect. *SDDS Inc. v. State of South Dakota*, 47 F.3d 263, 267 (8th Cir. 1995). Accordingly, the jury's verdict that the County's actions were intentionally discriminatory is sufficient to create liability absent a showing that the County acted for legitimate purposes and that it had no other nondiscriminatory alternatives to advance those interests. *Id.* at 268 (explaining that a finding of discrimination triggers the strictest level of scrutiny); *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 334 (4th Cir. 2001) (finding of discriminatory purpose triggers strict scrutiny analysis).

[*12]

Again, the Court disagrees. Plaintiff's theory was that a county-based need policy, like the one expressly stated in Finding No. 4, has the practical effect of discriminating against interstate commerce. This theory of discrimination is similar to the needs requirement at issue in *Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 788 (4th Cir. 1996). In *Sierra*, the South Carolina Department of Health and Environmental Control promulgated a regulation that imposed a needs requirements for all permits to establish or expand hazardous waste treatment and storage facilities. *Id.* at 781. However, "need" could be demonstrated "by reference to the level of waste generated in South Carolina only." *Id.* at 788.

In this case, the jury heard evidence that the County granted (or did not object to) landfill expansions sized to serve County needs in 1993, 1996, and 1999 and that the County denied plaintiff's landfill expansion, in part, because of the lack of a county-based need. *See* Finding No. 4. The jury could reasonably conclude from this evidence that county-based need was the determining variable in the County's permitting [*13] decisions. From there, plaintiff relied primarily on the expert testimony of Dr. Mark Berkmann to explain the discriminating economic effects such a policy has on interstate commerce. Specifically, Dr. Berkmann explained the economic consequences of a need-based permitting policy that only takes local needs into account. This analysis was helpful to the jury because Wright County trumpeted the fact that its zoning decisions did not place any overt restrictions on the importation of waste to fill whatever landfill space the County allowed to exist. Dr. Berkmann explained that despite the apparent evenhandedness of the County's actions, the practical effect of such a local-need-only policy chokes off interstate commerce nearly as effectively as an overt ban on the importation of waste. Dr. Berkmann's testimony was thus offered to demonstrate why, as a matter of economics, a local needs-only policy has a discriminatory effect on interstate commerce.

The County challenges the Court's admission of Dr. Berkmann's testimony, contending that his opinions are not based on reliable facts and data nor are they the product of reliable principles and methodology. The County also claims that the [*14] Court erred in not making specific findings on the record when it denied the County's motion to strike the testimony of Dr. Berkmann.

The County did not bring a pretrial motion *in limine* to exclude the testimony of Dr. Berkmann under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). The County first raised a precautionary objection to Dr. Berkmann under Rule 702 at the beginning of his testimony. Trial Transcript ("TT") at 5-6. At the conclusion of his testimony, the County moved to strike his testimony based on "lack of methodology, lack of basis under 702, lack of information to perform reasonable judgments that would be helpful to the jury." TT at 119-20. The court denied the County's motion. *Id.*

The Court's decision to admit the testimony of Dr. Berkmann is, of course, guided by the principles set forth in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). In *Daubert* and *Kumho,* the Supreme Court held that Federal Rule of Evidence 702 imposes a gatekeeping function on trial judges to ensure that expert testimony is not [*15] only relevant, but also reliable. Among the factors to consider is whether the "'expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)). As the Supreme Court emphasized in *Daubert,* "the inquiry envisioned by Rule 702 is . . . a flexible one." 509 U.S. at 594.

Having heard the testimony of Dr. Berkmann and having reviewed the parties' arguments, the Court concludes that Dr. Berkmann's report and analysis satisfied the requirements of *Daubert*. Dr. Berkmann was well qualified to opine on solid waste issues, drawing

upon his extensive economic training and experience in the solid waste field in rendering his opinions. Furthermore, he specifically analyzed the market for waste services in Wright County and the surrounding market, determining that the distribution of facilities, prices and hauling distances were such that plaintiff was a very minor participant in the interstate market in the absence of its requested expansion.

Although Dr. Berkmann relied on a 1998 [*16] study and geographic map created in another litigation matter involving Hennepin County, Dr. Berkmann explained at trial how the markets for industrial waste and demolition debris are likely to differ from municipal solid waste, and in particular, why the size of the market for industrial waste was likely to be larger than for municipal solid waste. Dr. Berkmann also explained why the data he relied upon in his prior study were still useful, and how subsequent changes in the regulations and the market affected his analysis. The Court also believes that many of the alleged deficiencies in Dr. Berkmann's analysis and reliance on the 1998 study go more to the weight, not the admissibility, of the testimony.

Finally, to the extent the County contends that the Court failed to make findings at the time the Court denied the County's motion to strike Dr. Berkmann's testimony from the record, the Court provides such findings above. *Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (trial court "has discretion in the *manner* in which it conducts its *Daubert* analysis," explaining that "the district court may satisfy its gatekeeper role [*17] when asked to rule on a motion *in limine*, on an objection during trial, **or on a post-trial motion**" (emphasis added)).

**3. Non-Discriminatory Alternatives**

Wright County next claims that even if plaintiff did prove the elements of either its discriminatory intent or effects claims, the weight of the evidence demonstrates that there was no alternative means to achieve the County's legitimate interests in agricultural preservation and environmental protection other than to enact Ordinance 98-01 and deny plaintiff's rezoning request. To prevail on this defense, the County had to prove, under rigorous scrutiny, that its decisions were taken in an effort to advance a legitimate local interest unrelated to economic protectionism and second, there were no other non-discriminatory ways to achieve that local interest. *See* Instruction No. 20 (citing *SDDS Inc. v. South Dakota,* 47 F.3d 263, 271 (8th Cir. 1995); *Chemical Waste Mgmt. Inc v. Hunt,* 504 U.S. 334, 344-47, 112 S. Ct. 2009, 119 L. Ed. 2d 121 (1992)). Upon review of the record and the burden borne by the County, the Court cannot say that the jury's finding on this issue was erroneous. Although the jury may have concluded [*18] that the County's interests were legitimate, there was evidence in the record from which the jury could conclude that there were several other means available to the County to achieve those interests. Again, the burden of proof was on the County and the jury could simply have concluded that the County failed to carry that burden.

**4. Evidentiary Rulings**

Wright County maintains that the Court erred in admitting Dr. Berkmann's testimony and in suppressing evidence of plaintiff's compliance record. The Court has already discussed and resolved Wright County's objection to the admission of Dr. Berkmann's testimony. As to the exclusion of plaintiff's compliance record, the Court properly excluded that evidence under Rule 403 of the Federal Rules of Evidence.

**5. Jury Instructions**

Finally, Wright County contends that post-trial relief is necessary to remedy flaws in the instructions to the jury. Specifically, defendant argues that the jury should have been instructed with respect to causation, the question of discriminatory effects should not have been submitted to the jury, a similarly-situated instruction was required and lastly, the jury should have been cautioned that negatively [*19] impacting interstate commerce is not the same as discrimination against interstate commerce.

Jury instructions are not erroneous if they, as a whole, fairly and adequately instruct the jury as to the substantive law. *Cummings v. Malone,* 995 F.2d 817, 822 (8th Cir. 1993). The form and language of jury instructions is left to the sound discretion of the Court provided they correctly state the law. *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 731 (8th Cir. 1993).

As to the first issue, the County contends that the Court erred in failing to instruct the jury in accordance with the liability framework set forth in *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977). According to Wright County, *Mt. Healthy* sets the legal standards for **all** unconstitutional motivation cases, including challenges under the dormant commerce clause. The Court received extensive briefing and heard lengthy arguments on this important issue before trial. After giving the issue much consideration, the Court declined to depart from the well-established legal analysis involving the dormant commerce clause challenges [*20] in favor of a liability framework that found direct support in dicta of only one district court opinion. *Randy's Sanitation, Inc. v. Wright County,* 65 F. Supp. 2d 1017, 1029 (D. Minn. 1999). While the

County's arguments are not without some force, the Court remains persuaded that it properly instructed the jury in accordance with dormant commerce clause analysis applied consistently by the Supreme Court and Eighth Circuit. *Oregon Waste Sys. Inc. v. Department of Envtl. Quality of the State of Oregon*, 511 U.S. 93, 99, 128 L. Ed. 2d 13, 114 S. Ct. 1345 (1994); *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392, 128 L. Ed. 2d 399, 114 S. Ct. 1677 (1994); *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977); *Maine v. Taylor*, 477 U.S. 131, 91 L. Ed. 2d 110, 106 S. Ct. 2440 (1986); *U & I Sanitation, Inc. v. City of Columbus*, 205 F.3d 1063, 1067 (8th Cir. 2000); *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1383 (8th Cir. 1997); *SDDS Inc. v. South Dakota*, 47 F.3d 263, 267-68 (8th Cir. 1995) [*21] (explaining two-step approach to dormant commerce clause analysis and stating that "if the state measure is discriminatory, it is subjected to the 'strictest scrutiny'"). Indeed, the Court's ruling on this issue was reinforced by the Fourth Circuit just days later in *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 334-45 (4th Cir. 2001) (discussing the liability framework applicable to dormant commerce clause challenges under 42 U.S.C. § 1983 and applying strict scrutiny analysis if any of the provisions at issue are found either to discriminate in their practical effect or to have been enacted for a discriminatory purpose).

The Court also reaffirms its earlier rulings concerning whether plaintiff had sufficiently plead or argued a discriminatory effects claim and the issue concerning the similarly situated instruction. Finally, the Court stands by its decision not to include the phrase from *Cotto Waxo Co. v. Williams*, 46 F.3d 790 (8th Cir. 1995), that distinguishes between negative impacts and discrimination against interstate commerce. In the Court's view, that distinction was adequately covered by the language of Instruction [*22] 19 which explained that "incidental effects on interstate commerce do not amount to discrimination against interstate commerce." Additionally, the jury was provided with an affirmative description of what does constitute discrimination against interstate commerce in Instruction 14, thus giving the jury a very clear picture of what was necessary to find liability. Accordingly, the Court believes its instructions were appropriate.

Thus, for all the foregoing reasons, the Court denies defendant's motion for judgment as a matter of law, or alternatively, a new trial pursuant to Rules 50, 56 and 59 of the Federal Rules of Civil Procedure.

**II. Plaintiff's Motion for an Order to Show Cause**

In the second motion before the Court, plaintiff has moved for an order to show cause why Wright County should not be held in contempt of the Court's October 25, 2001 Order regarding the issuance of a license to plaintiff for its landfill expansion. According to plaintiff, the County has subjected plaintiff's license application to conditions that are neither contemplated nor permitted under the October 25, 2001 Order and accordingly seeks an order from this Court that the County is in contempt. [*23]

The Court has reviewed the briefs submitted by the parties, but unfortunately, the Court is unable to fully resolve the issues on paper. Accordingly, the Court has scheduled a hearing on this matter and anticipates that these issues can be resolved in an expeditious manner.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for relief altering and amending the judgment, for judgment as a matter of law and summary judgment and in the alternative for new trial [Docket No. 198] is **DENIED**.

2. A hearing on plaintiff's motion for a contempt order [Docket No. 226] is scheduled for **Tuesday, April 23, 2002 at 9:00 a.m.** in Courtroom 13E of the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota.

DATED: March 31, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM

United States District Judge